UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO. 1:10-CR-51 |
| | ) | |
| WILLIAM HAGLER | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is the Defendant, William Hagler's ("Hagler's"), "Motion to Dismiss with Prejudice" filed on August 19, 2010. The Government responded on September 3, 2010, and Hagler, through counsel, replied on September 17, 2010. For the following reasons, the Motion to Dismiss the Indictment will be DENIED. Hagler also seeks reconsideration of this Court's June 28, 2010 ruling wherein it dismissed *without prejudice* indictment 1:09-CR-104. The Motion to Reconsider will also be DENIED.

## DISCUSSION

Hagler was originally indicted on October 28, 2009 on charges of bank robbery by force or violence and/or aiding and abetting the same in violation of 18 U.S.C. §§2113(a) and 18 U.S.C. §2. (Indictment, 1:09-CR-104). The bank robbery at issue occurred nearly ten years ago, on August 15, 2000. Only after the Defendant's DNA was linked to evidence taken from the bank robbery was he indicted on the charges above. Given the nearly ten year gap between the offense and his Indictment, Hagler moved for dismissal of the Indictment claiming that it was filed outside the five year statute of limitations in 18 U.S.C. §3282. Hagler also filed a motion to dismiss contending that 18 U.S.C. §3297, which tolls the statute of limitations otherwise provided in §3282 under certain

1

circumstances, is unconstitutionally vague. After an evidentiary hearing was held on these motions and briefing was scheduled, the Supreme Court decided *United States v. Bloate*, ___ U.S. ___, 130 S.Ct. 1345 (2010) wherein the Court clarified certain periods of excludability under the Speedy Trial Act, 18 U.S.C. §3161. Hagler then filed a motion asserting that under *Bloate*, the Speedy Trial Act was violated in his case. On June 28, 2010, the undersigned granted that motion **without** prejudice. Because the indictment was dismissed, no ruling was made on Hagler's other motions.

Thereafter, a new Criminal Complaint was filed against Hagler alleging again a violation of 18 U.S.C. §§2113 (a) and (d) relating to the same robbery that was the subject of the indictment in 1:09-CR-104. He was indicted on July 28, 2010 in the present cause # 1:10-CR-51.[1]

Hagler has now renewed the motions to dismiss filed in his previous case and asks the court to reconsider the dismissal of 1:09-CR-104 so that such dismissal would be **with** prejudice.[2] The court now turns to these issues.

## DISCUSSION

In support of his motions to dismiss, Hagler makes several arguments regarding the application of the statute of limitations periods to his case. The Court considers first Hagler's assertion that the statute of limitations provision, 18 U.S.C. §3297, relied upon by the Government to toll the otherwise five year statute of limitation in 18 U.S.C. §3282, is void for vagueness, since this argument is without any merit and easily dispensable.

The vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment.

---

[1]The present indictment also names Hagler's brother, Shawn Hagler, as a co-defendant. Shawn Hagler has not been arrested on the outstanding indictment.

[2]Between the filing of the new Complaint and the Indictment, Hagler's counsel moved to withdraw and new counsel was appointed for him.

2

To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 130 S.Ct. 2896 (2010) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357(1983). The void-for-vagueness doctrine embraces these requirements.

>Title 18 U.S.C, §3297, enacted on October 30, 2004, provides as follows:

>In a case in which DNA testing implicates an identified person in the commission of a felony, no statute of limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period.

Here, Hagler asserts that §3297 is overly vague in that it does not separately define the phrase "implicates an identified person." He argues that it is impossible to decipher whether the statute refers to a person who has been identified by DNA testing or whether it is referring to a person who was previously identified as a suspect in the case. Alternatively, he argues that even if the provision is not overly vague, the charges against him should still be dismissed because he was "implicated" more than five years ago.

The problem with Hagler's initial argument is that 18 U.S.C. §3297 is a statute of limitations provision; it does not describe prohibited conduct and is not substantive in nature. And, the void for vagueness doctrine applies only to criminal statutes defining behavior which is illegal. *Williams v. Brigano*, 238 F.3d 426 (6th Cir. 2000). Indeed, the doctrine is intended to apply to circumstances where reasonable people would not understand that their conduct was criminal in nature. Unlike a penal statute prohibiting certain conduct, "a statute of limitations reflects a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict" and thus, prosecution does

not serve the public interest, *Stogner v. California*, 539 U.S. 607, 615 (2003). The two types of statutory provisions serve entirely different purposes. Thus, where a statute does not attempt to define any criminal offense, such as the present §3297, the vagueness doctrine has no application. Accordingly, Hagler's first argument is misplaced and offers him no aid.

Hagler's second argument, however, must receive more careful consideration. Section 3297 provides a tolling of the otherwise applicable statute of limitations period until a period of time equal to the time provided in the otherwise applicable statute of limitations. In this case, 18 U.S.C. §3282 provides for a five year statute of limitations in most non-capital offenses. Here, that means that the original statute of limitations ran on August 15, 2005. Section 3297 tolls that statute of limitations in cases where DNA testing "implicates an identified person in the commission of a felony."

At the evidentiary hearing, the following facts were established by testimony of Lisa Black, the DNA Supervisor for the Indiana State Police Laboratory in Lowell, Indiana. Ms. Black testified that on May 2, 2001, she received DNA samples of several items taken from a 1990 Pontiac Bonneville that was connected to the bank robbery. One of those items was a tape lift of a hair found on a glove in the interior front passenger compartment of the vehicle. According to Ms. Black, this item, referenced throughout the hearing as Item #6B, was tested on May 18, 2001 but given the technology available at the time, no DNA profile developed for 6B.[3] (Transcript of

---

3

| | |
|---|---|
| Q. | ....What do you mean no profile developed? |
| A. | I attempted the DNA analysis, and what I got is I saw nothing. |
| Q. | Right. You couldn't find a DNA on that hair? |
| A. | There was DNA, but not – was not a sufficient quality for me to visualize a profile. So then in 2008, with newer technology I was able to visualize the DNA profile. |

(Transcript at 36).

Evidentiary Hrg, at pp. 18-19). A second sample, Item #7B(1), a sample from a yellow mask found in the Bonneville was also tested and returned a "mixed profile" indicating at least two different DNA contributors. The results for Item #6B were not entered into a national database because no profile was suggested by the results. The results for 7B(1) were entered into the national database.

On July 23, 2002, Defendant Hagler's DNA profile was entered into the national database following his state felony conviction in Indiana. Also in 2002, the Indiana State Police updated their technology for the testing of DNA. According to Black, this testing "gave us all 16 areas of DNA molecules," when previously only 8 areas of DNA molecules were available. (Transcript at 39). Black further indicated that this change " made testing eligible to be uploaded into the national database...that testing was significantly more sensitive than Power Plex 1.1." (*Id.* at 40).[4]

On November 10, 2007, item 7B(1) was removed from the state database because of excessive matches. There is no evidence that item 7B(1) generated a match to Defendant Hagler. (Transcript, at 27).

In 2008, the Indiana State Laboratory again upgraded its DNA technology: "[I]n 2008, we, again, upgraded to a more sensitive technology which allowed us to go back and retest samples."

---

[4]Ms. Black described the technology changes as follows:

> There was [sic] two different – actually, two generations of technology changes made between 2001 and 2008. The first one was, as I indicated, the initial DNA analysis was performed in what's called Power Plex 1.1 which only looked at eight locations on the DNA molecule. We then upgraded to where we looked at 16 areas on the DNA molecule.
> And then, in 2008, we changed how we visualized the DNA. Previously, we used what is commonly referred to vertical slab gel electrophoresis, and we converted to what is called capillary electrophoresis. I describe it as saying think of it as beta and VHS version. And we had been using the Beta. And we converted, as most of the country was already, to VHS analysis.
> We upgraded to a much more sensitive method, so it allowed us to obtain information that we were not able to obtain under the old procedure.

(Transcript, at 20-21)

(Transcript, at 40). When pressed at the evidentiary hearing as to why the lab did not retest samples prior to 2008 since it had upgraded in 2002, Black responded as follows:

> Basically, we – have a continuing back log. We have to just keep up with the work that comes in every day. And until we had reached a – we'd hired more people and had the availability – again, we had grant money that allowed us to go back and look at cold cases in 2008.

(Transcript, at 40).

On December 3, 2008, Black re-examined items 6B, 7B1 and an item identified as Item #8A[5] using the more sensitive, updated technology. (Transcript at 30). On January 6, 2009, an 11 loci profile for item 7B1 was uploaded into the system. According to Black, the sample still demonstrated a mixed profile but due to the new technology "we were able to pull out a major contributor." (Transcript at 31). The major contributor was later determined to be Shawn Hagler, the defendant's brother and co-defendant in this cause number. (*Id.* at 34, 38).

On January 6, 2009, a new profile developed for item #6B and it was entered into the national database. The following day, an Initial Match Detail Report returned a "hit" showing a match to Defendant William Hagler. On June 29, 2009, after exhausting a confirmation process, Black confirmed the initial match linking item #6B to Defendant William Hagler. The original indictment followed on October 28, 2009.

In his brief, Hagler argues that he could have been "implicated as an identified individual" as early as 2002 when his DNA was entered into the system. He contends that the DNA evidence from the bank robbery was in police custody and that Indiana had the available technology in 2002 to test the DNA. Thus, he argues, that the evidence could have been matched to him in 2002.

---

[5]Item 8A did not match Defendant William Hagler. However, it was matched to co-defendant Shawn Hagler after a DNA sample was taken from Shawn Hagler.

Instead, the Government did not retest the samples until December 2008, well after the original statute of limitations expired. He contends that given the ten year time lapse since the commission of the crime, evidence is stale and it is impossible for him to mount a defense. He argues that this result could not have been intended by Congress when it enacted §3297 and that, if taken to its logical conclusion, the Government could engage in gamesmanship by holding DNA evidence without testing it for years and only after witnesses had become unavailable, link up the evidence.

Section 3297 was enacted as part of the Justice For All Act, ("the Act") see Pub.L. 108-405, Title II, § 204(a), on October 30, 2004.[6] As part of that law, Congress specifically provided that §3297 "shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section if the applicable limitation period has not yet expired." Pub.L. 108-405, Title II, § 204(c), 118 Stat. 2271, October 30, 2004.[7] As noted above, the original statute of limitations for this offense ran on August 15, 2005. Since §3297 was enacted prior to the expiration of that statute of limitations, it extends that original limitations period from the date "DNA evidence implicates an identified person...until a period of time following the implication of the person by the DNA testing has elapsed that is equal to the otherwise applicable limitation period." According to the Government, Hagler was "implicated" by DNA testing on June 29, 2009 when

---

[6]This provision was part of the Debbie Smith Act of 2004 which amended and expanded the DNA Backlog Elimination Act of 2000 to allow for formula grants to states and units of local governments for analyses of DNA samples and for improvements to DNA laboratories. See H.R. REP. 108-711.

[7]In *Stogner v. California*, 539 U.S. 607, 615-617, (2003), the Supreme Court held that legislation extending a statute of limitations cannot be given fully retroactive effect, to revive prosecutions that were already time-barred when the legislation was enacted as this would violate the *ex post facto* clause. The Court emphasized, however, that this does not impugn the validity of giving such reforms partially retroactive effect, to extend the limitation period for prosecuting an offense that is not yet time-barred when the statute of limitations reform is enacted. *Id.* Thus, in this case, since the applicable statute of limitations had not run on the effective date of the Act, there are no *ex post facto* concerns.

7

DNA evidence from item 6B was confirmed to be that of Defendant William Hagler. Thus, the Government argues that Defendant Hagler has been properly indicted within the relevant statutory period. The Government further argues that there is no evidence of a purposeful delay in the retesting process and the legislative intent behind the statute clearly supports its position.

In light of the arguments, the Court turns first to an examination of the purpose and intent of the statutory provision. As with any question of statutory interpretation, the Court must discern Congress's intent and begin with the language it used. *See Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004); *United States v. Vallery,* 437 F.3d 626, 630 (7th Cir.2006). A cardinal canon of statutory construction is that the court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992). If the language of a statute is clear and unambiguous, "in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Turkette,* 452 U.S. 576, 580 (1981) (quotations omitted); *see also United States v. Chemetco, Inc.,* 274 F.3d 1154, 1159 (7th Cir.2001).

Turning first to the plain language of the statute, the court finds no ambiguity in Congress's use of the phrase "implicates and identified individual." The <u>Merriam Webster</u> online dictionary defines "implicate" as " to bring into intimate or incriminating connection" such as "evidence that implicates him in the bombing." A search of other common dictionary references have similar definitions, see <u>Encarta World English Dictionary</u> (implicate means "to show connection of somebody with something: to show that somebody or something played a part in or is connected to an activity such as a crime; <u>Oxford English Dictionary Online</u> (implicate means "to show (someone) to be involved in a crime: police claims implicated him in many more killings).

8

"Identified" is defined in the same three above sources as follows: <u>Merriam-Webster Dictionary Online</u>: "to establish the identity of;" <u>Encarta World English Dictionary</u>: "to recognize somebody or something and to be able to say who or what he, she, or it is;" and <u>Oxford English Dictionary Online</u>: to identify someone/something with); associate someone) closely with; regard (someone) as having strong links with.

Using the plain meanings of the above words, to "implicate an identified person" means to establish the identity of someone who played a part in a particular action such as a crime. And here, the Government reasonably asserts that under this plain meaning DNA evidence taken from items worn into the bank and found inside the getaway car were associated with Hagler's DNA in 2009, thereby "implicating an identified person" under the statutory provision.

Hagler does not provide any alternate definition of the above phrase other than to suggest without much argument that it is unclear or somehow ambiguous. However, even if the Court were to indulge his suggestion, it is evident from the legislative history that Congress meant precisely the definition extrapolated from the plain meaning of the above words and, at the very least, there is no "clearly expressed legislative intent to the contrary." *Turkette,* 452 U.S. at 580, 101 S.Ct. 2524 (quotations omitted).

As noted earlier, section 3297 was promulgated as part of the Justice For All Act which was intended to enhance the "rights and protections for all persons involved in the criminal justice system" through two avenues. First, the Act created "a new set of statutory victims' rights that are both enforceable in a court of law and supported by fully-funded victims' assistance programs." Second, the Act set forth "a comprehensive DNA bill that seeks to ensure that the true offender is caught and convicted for the crime." H.R. Rep 108-711, 2004 WL 2348416, *1, 2005

9

U.S.C.C.A.N. 2274, 2275). As part of these goals, the Act intended to eliminate the problems of backlogs and the lack of up-to-date technology which "result in significant delays in the administration of justice," *Id.* at *4, by providing funding to states to improve their technology and allowing formula grants to states and units of local governments to analyze DNA samples on file.

During hearings held on June 17, 2003 before the Subcommittee on Crime, Terrorism, and Homeland Security Committee on the Judiciary in the United States House of Representative on the proposed Act , the Honorable Sarah V. Hart, Director, National Institute of Justice, United States Department of Justice provided insight into the particular provision at issue in this case. In discussing the issue, she outlined the traditional purposes of statutes of limitations:

> A statute of limitations usually reflects a legislative judgment that the burden of prosecuting an old crime may outweigh its benefits. It balances the need to prosecute serious crimes with concerns that a delayed prosecution may be unreliable given the passage of time and faded memories. A statute of limitations may also encourage law enforcement officials to investigate promptly suspected criminal activity.

She then went on to discuss the necessity and purpose of the tolling legislation:

> Where, however, a prosecution is supported by DNA evidence, imposing a statute of limitations does not serve these public interests. The dependability of DNA evidence does not diminish over time and it produces reliable verdicts years after the crime was committed. Likewise, the mechanical application of a fixed statute of limitations can bar a trial even where law enforcement officials have promptly investigated the crime and sought to use DNA evidence. For these reasons, we have recommended that the provisions governing the time period for commencing prosecution in Federal cases be amended so as to toll the limitation period for prosecution in felony cases in which the perpetrator is identified through DNA testing. This reform is necessary to realize the full value of the
> DNA technology in solving crimes and protecting the public from rapists, killers, and other serious offenders...
>
> [W]e have recommended remedial legislation to provide that, in felony cases in which the defendant is implicated through DNA testing, the statute of limitations does not begin to run until the DNA identification occurs. Even where crime scene DNA evidence is available, unavoidable delay may occur before the offender can

> be identified through DNA matching, if he is not convicted until years later for some other offense which results in a DNA sample being taken and entry of his DNA profile into CODIS. The proposed tolling provision will help to ensure that prosecution will not be barred.

See, http://judiciary.house.gov/legacy/hart071703.pdf at pages 15-17.

In light of the above testimony, it is clear that Congress was reminded of the importance of statute of limitations periods but, in passing §3297 it intended to address the very concerns raised by Judge Hart. And, those concerns raised by Judge Hart clearly indicated, Congress's intention, as the Government suggests, that the proposed tolling provision would be applicable in cases such as the one here where crime scene DNA evidence was available but the offender is only identified at some later date. Accordingly, the indictment of Hagler under the circumstances of this case was clearly intended by Congress when it enacted the tolling statute and provides no avenue for relief for Hagler.

This said, what Hagler's true argument appears to be is that the statute of limitations should have started running in 2002 when the Indiana State Laboratory had available the technology to retest the crime scene evidence. Under his analysis, the statute of limitations would have run in 2007 and he could not be charged with the present offense. And, while this argument has some appeal, there is absolutely no evidence before the court to suggest that the state laboratory or the government purposely delayed the testing so as to manipulate the statute of limitations or to permit evidence to run cold. The uncontested evidence is that Indiana received grant money in 2008 (likely pursuant to the provisions of the Act) to retest samples with the updated technology. This was precisely what the Act intended states to do. And, while it is unfortunate that it took Indiana until 2008 to reach the backlog of DNA evidence it had, there is no evidence that in this case their actions were purposely delayed to frustrate either the prosecution or the defense in this case. More

importantly, the Government in this case promptly indicted Hagler once it became aware that the DNA evidence implicated him. Indeed, he was indicted within four months after the June 29, 2009 confirmation that a DNA match had occurred. There is certainly no evidence of malfeasance on the part of the Government in its handling of the case. Accordingly, Hagler's Motion to Dismiss is DENIED.

Hagler also asks the court to revisit its June 28, 2010 ruling in 1:09-CR-104 wherein the court dismissed the indictment without prejudice. The Court has reviewed its Order pursuant to Hagler's request and he has presented no new arguments which would alter the Court's previous findings. Thus, the Motion to Reconsider is also DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion to Dismiss is DENIED. The Motion to Reconsider this Court's prior ruling in 1:09-CR-104 is also DENIED.


Entered: This 4th day of October, 2010

s/ William C. Lee
United States District Court