UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO. 1:10-CR-51 |
| | ) | |
| WILLIAM HAGLER | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant, William Hagler's ("Hagler" or "Defendant") "Motion for New Trial" [DE 131] filed on April 13, 2011. The Government responded on April 27, 2011 to which the Defendant replied on May 10, 2011. For the following reasons, the Defendant's Motion for New Trial will be DENIED.

## PROCEDURAL BACKGROUND

On June 29, 2010, a single count Criminal Complaint was filed against Hagler alleging a violation of 18 U.S.C. §2113(a) and (d) in connection with his participation in the attempted armed robbery of the National City Bank in Woodburn, Indiana on August 15, 2000. Thereafter, a single count Indictment was returned against Hagler and his brother, Shawn Hagler, charging them with a violation of 18 U.S.C. § 2118 in connection with their participation in the attempted armed robbery of the National City Bank in Woodburn, Indiana on August 15, 2000.

Hagler proceeded to trial and, on December 16, 2010, was convicted on the sole count of the Indictment. Thereafter, a presentence investigation report was prepared and a sentencing date was set in the case. Prior to sentencing, Hagler learned that the Government, in preparation for his brother's trial, had certain items of evidence DNA tested by the Indiana State Police. Upon

1

receiving the results of that testing, Hagler filed the present motion seeking to vacate his conviction and requesting a new trial.

## FACTUAL BACKGROUND

Aside from maintaining his generalized statements of innocence, Hagler has not contested, for purposes of this motion, the factual recitation of the case or the evidence produced at trial as set out by the Government. As such, the court adopts this factual recitation in a shortened form.[1]

**A.** **Evidence Presented at Trial**

On August 15, 2000, Cheryl Hammond testified that she was driving to the Clip n' Tan Salon in Woodburn, Indiana and witnessed a white car with a dark blue top driving slowly down Main Street in Woodburn, Indiana. (Hammond, p.78, L. 15- 19) Two black males were "scrunched down" in the car as if they were trying not to be seen. (Hammond, p.79, L. 1 -2, p. 83, L.10 -13). The white car pulled up next to the west side doors of the National City Bank[2] in Woodburn, Indiana. (Hammond, p.79, L. 22 - 25, p.80, L.1 - 2). One black male exited the white car and crept toward the doors of the bank. (Hammond, p.84, L.25).

Hayley Etzler, Judith Norden, and Corinne Lytle were all employees of the National City Bank working in the Woodburn, Indiana bank on August 15, 2000. Each of them witnessed two people enter the bank wearing dark clothing and Halloween masks. (Etzler, p.32, L.8, p. 32, L. 11-12, p. 32, L.19 - 20; Norden, p.17, L.3; Lytle, p.46, L. 19 - 23)). Each of them believed the two

---

[1]The Government has provided detailed citations to the trial transcript and thoroughly recounted the testimony of each witness at trial. Given the focus of the present motion and the fact that this case was entirely circumstantial, the Court has chosen to pare the testimony of the occurrence witnesses and focus the factual recitation on the crux of this case which is the testimony surrounding the physical evidence.

[2]Stacy Gray testified that the deposits of the National City Bank branch in Woodburn, Indiana were insured by the Federal Deposit Insurance Corporation on August 15, 2000. (Gray, p.64, L.16 - 19).

individuals to be black males (Etzler, p.34, L.13 - 15; Norden, p.17, L.7 and p.11, L.9; Lytle, p.47, L. 10 - 15, 18 and p.48, L.25, p.49, L.1- 6)) and saw them carrying firearms (Etzler, p.32, L.15,18; Norden, p.16, L.15 -16; Lytle, p. 50, L. 11-16 )). All three women identified exhibits presented to them of the scene inside the bank as true and accurate representation of the bank during the attempted robbery. All three women were terrified during the robbery.

In addition to the three women above, Darrin Lotz was employed as a maintenance man for the National City Bank in Woodburn, Indiana on August 15, 2000. Lotz was on a ladder in the lobby of the bank hanging banners for a bank promotion (Lotz, p.53, L.24 - 25, p. 54, L.1 - 3) when he heard a commotion in the bank and saw a man standing in the middle of the lobby pointing a gun at him. (Lotz, p.54, L.13 - 14). Lotz saw two people run from the bank through the west entrance, and head west in a light colored 4 door sedan (Lotz, p.56, L.21 - 23, p. 57, L. 8 - 9, p. 58, L. 12 - 13, L. 20 - 21). Andrea Jackson, a bank customer, testified that two people entered the bank wearing whole head masks. (Jackson, p.70, L.12 - 16).

Lyn Rorick, owner of the Clip n' Tan salon, saw the white car with the blue top sitting alongside the National City Bank in Woodburn, Indiana on August 15, 2000. (Rorick, p.101, L. 1). Two men came out of the bank, got into the white car, and headed west away from the bank. (Rorick, p.102, L. 20 - 21, p. 103, L.1). Approximately one hour later after the car was abandoned, Rorick was taken to the trailer park where he identified the car he saw leaving the National City Bank with the two individuals inside. (Rorick, p.103, L. 10 - 23).

Allen County Police Department Detective Ronald Rayl testified that on August 15, 2000 he was alerted to the robbery at the National City Bank in Woodburn, Indiana. (Rayl, p.87, L. 16 - 22). Det. Rayl was advised that the getaway car was a blue over white General Motors product.

(Rayl, p.88, L. 12 - 15). A short time later, Det. Rayl located a vehicle matching that description still running in the Woodburn Trailer Park which is on the west edge of Woodburn, Indiana approximately one mile west of the National City Bank. (Rayl, p.88, L. 23 - 25, p. 89, L. 7, p. 90, L. 1, 8 - 9).The steering column on the car was broken and the rear passenger side opera window had been shattered. (Rayl, p.89, L. 2, p. 90, L. 20 - 21).[3]

Connie Hanley testified that she has twin boys with Hagler that were born in May, 1998. (Hanley, p.131, L. 6). At the time of the attempted robbery, Hanley lived in the Woodburn Trailer Park with her twin boys. (Hanley, p.131, L. 10 - 11). Hagler visited her at the Woodburn Trailer Park. (Hanley, p.131, L. 14 - 16). Prior to 2000, she and Hagler had a casual conversation in which Hagler commented on how easy it would be to rob the bank because there were not a lot of police around. Hanley said that she understood Hagler to be talking about the National City Bank as there was only one bank in Woodburn, Indiana. (Hanley, p.131, L. 5- 22).

Indiana State Police Crime Scene Investigator Michael Trittipo testified that he removed the following items from the white Pontiac found in the trailer park: (1) Gray hooded pullover sweatshirt with hood cut off; (2) orange pumpkin mask; (3) black hooded sweatshirt; (4) yellow cloth mask; (5) gray & black hooded pullover jacket with Chicago Bulls on front; (6) yellow cloth gloves; and (7) latent print lifts from the White Pontiac (Trl.Tr. 12-15-10, p.153, L. 9 - 16, p. 164,

---

[3] George Townsend testified that he owned the white 1990 Pontiac Bonneville that was found in the Woodburn Trailer Park on August 15, 2000. (Townsend, p.89, L. 2, p. 109, L. 22 - 25). Townsend drove the car to work that morning at Navistar on Wayne Trace in Ft. Wayne, Indiana. His was later stolen from the Navistar parking lot.(Townsend, p.108, L. 13 - 14, L. 18 - 20). When Mr. Townsend came out to find his car, he found a puddle of glass where the right rear of the car would have been. (Townsend, p.109, L. 1 - 3). Townsend testified that the steering column of his car was not in that condition when he parked it in the lot at Navistar on August 15, 2000, nor was the rear opera window shattered. (Townsend, p.110 L. 17 - 25). Of the items found in the vehicle, Townsend testified that only the pillow, the cushion, and the white paper box belonged to him. The other items, he testified, did not belong to him. (Townsend, p.111, L. 4 - 25, p.112, L. 2 -21, p. 113, L. 4 - 6).

L. 19 - 20). Exhibits 30, 32, 34, and 42 (ISP Item numbers 6, 8, 10, and 11) were submitted to the ISP laboratory for analysis on August 18, 2000. (Trl.Tr. 12-15-10, p.165, L. 15 - 23).

The Government's key evidence in the case was provided by Lisa Black, a DNA and serology expert with the Indiana State Police. She testified that she examined a hair that came from a tapelift made from the gloves found in the getaway car and admitted as Government Exhibit 34 (ISP Item number 6). The tapelift was identified as Government's Exhibit 36 (ISP Item number 6B). Ms. Black testified that when Government's Exhibit 36 (ISP Item number 6B) was first analyzed for the presence of DNA in 2001, there was no DNA found. (Black, p.227 L. 20 - 25). Ms. Black explained that this was due to the DNA technology in use at that time. By the time Government's Exhibit 36 (ISP Item number 6B) was selected for re-analysis in 2008, the laboratory was using a far more sophisticated and discriminating DNA testing methodology. (Black, p.228 L. 24 - 25, p. 229, L. 1 - 17). When Government's Exhibit 36 (ISP Item number 6B) was retested in 2008 using the new technology, a DNA profile was extracted from the sample. (Black, p.231, L. 15 - 16). The DNA profile was uploaded to both the state and national DNA databases. (Black, p.231 L. 18 - 20). The DNA profile obtained from the re-examination of Government's Exhibit 36 (ISP Item number 6B) was searched in the Indiana database and found to be consistent with Hagler. (Black, p.231 L. 24 - 25, p.232, L.1). Ms. Black then compared the DNA profile developed from Government's Exhibit 36 (ISP Item number 6B) with a known DNA sample from Hagler admitted as Government's Exhibit 38 (ISP Item #104A) (Black, p.234 L. 24). The DNA profile obtained from the re-examination of the hair in Government's Exhibit 36 (ISP Item number 6B) matched the known DNA profile of Hagler. (Black, p.235 L. 7 - 11).

The Government's second piece of physical evidence was provided by Kacie Proffitt, a latent

fingerprint examiner with the Indiana State Police. She examined the latent fingerprint lifts taken from the vehicle found in the trailer park and admitted as Government's Exhibit 41(ISP Item Number 13A - 13G). Item number 13F was determined to be a latent print of value. (Proffitt, p.202 L. 7 - 11). Item 13F was compared to a known fingerprint standard of Hagler, admitted as Government's Exhibit 43 (Proffitt, p.191 L. 18). Proffitt testified that the fingerprint in Item 13F matched the known fingerprint of Hagler in Government's Exhibit 43. (Proffitt, p.203 L. 10-12).

**B.     Post-Conviction DNA Analysis**

On February 8, 2011 and in anticipation of Shawn Hagler's trial, the Government filed a Motion to Withdraw Exhibits 29 (a gray sweatshirt) and 31 (black hooded sweatshirt) for additional DNA testing. On March 11, 2011, a new Certificate of Analysis was prepared relating to the analysis of Government's Exhibits 29 and 31. The examiner determined that as to the neck of the gray sweatshirt (Government's Exhibit 29; ISP Item number 5), there was a mixture of DNA present and no conclusion could be drawn as to whether or not Hagler was the contributor of that DNA. As to the samples taken from the black sweatshirt (Government's Exhibit 31 and ISP Item number 4) and other areas tested of the gray sweatshirt, the examiner concluded that there was an insufficient quantity of DNA for further analysis.

**DISCUSSION**

Federal Rule of Criminal Procedure 33 authorizes the district court to vacate any judgment and grant a new trial if the interest of justice so requires. In the case of newly discovered evidence, "the interest of justice so requires" where evidence is discovered after trial, could not have been discovered sooner, is not cumulative, and would probably result in acquittal. *United States v. Reyes,* 542 F.3d 588, 595 (7th Cir.2008). Such a determination is completely within the Court's sound

discretion. *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir.1984)). However, the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" *United States v. Linwood,* 142 F.3d 418, 422 (7th Cir.1998) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990)).

Hagler argues that the Certificate of Analysis detailing the results of the DNA testing on the gray sweatshirt and the black hooded sweatshirt is evidence entitling him to a new trial. He contends that this evidence was clearly produced post-trial and that it is material evidence which indicates "no DNA of Defendant Hagler was found on the sweatshirt." (Motion, ¶6). Because the jury would have had evidence that Hagler's DNA was not found on the sweatshirts, he asserts, they could have acquitted him of the bank robbery.

A review of the Certificate of Analysis produced as a result of DNA samples taken from the sweatshirts demonstrates precisely why Hagler's above argument fails across the board. With respect to Item 5A1, the conclusions reached are as follows:

> The DNA profile obtained from the neck of the gray sweatshirt (5A1 in item 5A) demonstrated the presence of a mixture from which at least two individuals *cannot be excluded as possible contributors.* ***No conclusion*** can be drawn ...as to whether William Hagler (Item 104A) or Shawn Hagler (Item 106A) could be possible.

Certificate of Analysis, 3/11/2011 (emphasis added). Contrary to Hagler's argument, this evidence does not exculpate him at all. Rather, it only states that a conclusion cannot be reached as to whether DNA evidence found on the sweatshirt is attributable to either William or Shawn Hagler. This is not the same, as the Defendant asserts, as a finding that his DNA was excluded as a possibility or that his DNA was not found on the evidence.

Moreover, with respect to the second line of conclusions in the Certificate, the examiner concluded that "[s]amples from four areas of the black sweatshirt (Item 4A) and three additional

7

areas of the gray sweatshirt (item 5A) failed to demonstrate a sufficient quantity of DNA for further analysis." (*Id. at p. 2*). As a result, no DNA profile was created on those additional areas and absent a profile, these results could not be entered into the Indiana DNA database to determine the existence of a match. Thus, it appears that no evidence at all was yielded from this testing.

Hagler bears the burden of showing that the newly discovered evidence is both material, i.e. not merely cumulative or impeaching, and "would probably lead to an acquittal in the event of a retrial." *United States v. McGee,* 408 F.3d 966, 979 (7th Cir. 2005). He has done neither. First, DNA evidence that is inconclusive does not aid in Hagler's claim of innocence. Indeed, the definition of inconclusive evidence is that the evidence "does not resolve fully all doubts or questions" or "evidence leading to no conclusion or definite result." *See* **www.merriam-webster.com/dictionary/inconclusive.** Thus, at most, the evidence is cumulative of the other evidence Hagler presented at trial as to the absence of *more* physical evidence.

The real problem for Hagler is that even if the court found the above evidence somehow material to his case, it is difficult to conceive how this "newly discovered evidence" would have affected the verdict. "A showing of prejudice under the fourth prong of the test requires an 'actual probability that an acquittal would have resulted if the evidence had been available.' " *United States v. Gonzalez–Gonzalez,* 258 F.3d 16, 20 (1st Cir.2001). This is a difficult prong to meet especially where there is a substantial amount of other evidence supporting the moving defendant's conviction. *Id.*

The inconclusive results of DNA evidence found on the sweatshirts does nothing to aid Hagler's cause. It does not cast doubt on the fact that the Defendant's fingerprint and hair were found on other items connected to the bank robbery. Nor does it cast any doubt on the testimony

8

of Connie Hanley who lived in the very trailer park where the getaway car was abandoned, and testified that Hagler told her months prior to the date of the robbery that it would be easy to rob the bank. Thus, the jury had specific physical evidence from Hagler on items connected to the bank robbery as well as the testimony of someone close to Hagler who not only stated that he communicated an intent to rob the bank but who demonstrated that Hagler had familiarity with the place where the getaway car was abandoned. These key pieces of evidence, all of which were sufficient to sustain the verdict, remain unchallenged by the newest DNA evidence.[4] Thus, Hagler has not demonstrated a likelihood of acquittal had the new DNA evidence been known to the jury.

In sum, Hagler has not demonstrated at least one of the required elements necessary for the Court to grant him a new trial. *Gonzalez–Gonzalez,* 258 F.3d at 20 (holding that the failure to meet any one of the four factors, requires denial of new trial motion). Accordingly, his motion for a new trial [DE 131] is DENIED.

Entered: June 2, 2011

s/ William C. Lee<br>United States District Court

---

[4] The Government asserts that in addition to this evidence being immaterial and unlikely to result in acquittal, it also is not newly discovered because the sweatshirts were evidence in the trial and through due diligence, the Defendant could have sought his own testing of the sweatshirts. While there is some general appeal to this argument, it is equally clear that while the existence of the sweatshirts was known to the Defendant, the existence of potential DNA evidence on them was not. To the court's recollection, there was no evidence presented at trial that DNA evidence may have been found on the sweatshirts so as to warrant the Defendant's employment of an expert to test the evidence. Rather, Defendant had knowledge only after trial when he received the Certificate of Analysis that some evidence to test had been found on the sweatshirts.